**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| **ANTONIO MARTINEZ,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.  3:06-cv-00480-MEF-VPM** |
| | ) |
| **JAY JONES, et. al.,** | ) |
| | ) |
| **Defendants.** | ) |

<u>**DEFENDANTS' SPECIAL REPORT**</u>

COME NOW Sheriff Jay Jones, Major Cary Torbert, Jr., and Dr. John McFarland, Defendants in the above-styled cause, and submit their Special Report to the Court.

**INTRODUCTION**

On May 26, 2006, Plaintiff filed his Complaint in the United States District Court for the Middle District of Alabama against these Defendants.  On June 1, 2006, this Court ordered Defendants to file a Special Report and Answer.  On August 4, 2006, this Court granted the Defendants an extension of time until August 15, 2006, to file their Special Report and Answer.

The Plaintiff was arrested on January 9, 2006, on a charge of Robbery in the First Degree.  (Exhibit A, Inmate File of Antonio Martinez[1], "Inmate File," Inmate Booking Sheet dated January 9, 2006, pp. 2 and 3.)  He was booked into the Lee County Detention Facility that same day.  (Ex. A.)  On June 13, 2006, the Plaintiff was convicted of three counts of Possession of a Forged Instrument.  (Exhibit B, Inmate File, Inmate Release Sheet dated July 9, 2006, pp. 3-4.)  He was sentenced to two years of imposed confinement, thirteen years of suspended confinement, and three years probation.  (Ex. B; Exhibit C, Inmate File, Conviction Report dated

---

[1] For authentication of Plaintiff's Inmate File, <u>see</u> Exhibit E, Affidavit of Major Cary Torbert, Jr., "Torbert Aff.," ¶ 15.)

June 14, 2006.)  He was released and transported to Kilby Correctional Facility on July 10, 2006.

(Ex. B, p. 2.)

### PLAINTIFF'S ALLEGATIONS

The Plaintiff's Complaint alleges the following two constitutional violations:

(1)    The Plaintiff first alleges that there are no safety bars inside or outside of the

shower.  (Plaintiff's Complaint, pp. 2-3.)  As the Plaintiff was exiting the shower on April 28,

2004, he alleges that he fell and broke two of his fingers and dislocated a third.  (Id. at p. 3.)

(2)    The Plaintiff also alleges that he has not had anything done about his fingers

despite having been to the doctor four times.  (Id.)  He alleges that he has had his fingers taped

up but not set.  (Id.)  The Plaintiff asserts that he is not receiving proper medical attention

because his fingers have not been fixed after almost one month.  (Id.)

The Plaintiff requests the following relief:  (1) "to have the named defendants put in

safety rails in, and out of [the] shower;" (2) "imburse [sic] me for pain and suffering, and pay for

any medical bills incurred."  (Plaintiff's Complaint, p. 4.)

### DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by the Plaintiff as being untrue and

completely without basis in law or fact.  Defendants deny that they acted, or caused anyone to

act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.  (Exhibit D,

Affidavit of Sheriff Jay Jones[2], "Jones Aff.," ¶ 4; Exhibit E, Affidavit of Major Cary Torbert,

Jr.[3], "Torbert Aff.," ¶ 4; Exhibit F, Affidavit of John McFarland, M.D.[4], "McFarland Aff.," ¶ 4.)

---

[2] Jay Jones is the duly elected Sheriff of Lee County, Alabama, and has served in such capacity since 1999.  (Ex. D, Jones Aff. ¶ 2.)

[3] Cary Torbert, Jr., serves as Chief Deputy of Corrections of the Lee County Detention Facility and has obtained the rank of Major.  Major Torbert has worked with the Lee County Sheriff's Office for over 34 years.

[4] John McFarland, M.D. is a licensed physician serving as an emergency room doctor with East Alabama Medical Center.  Also, since 1994, Dr. McFarland has served as the treating physician for inmates at the Lee County Detention Facility.  (McFarland Aff. ¶ 2.)

Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, mootness, and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.     FACTS

Sheriff Jay Jones has delegated the responsibility for the day-to-day functions of the Lee County Detention Facility to Major Cary Torbert, Jr., the Chief Deputy of Corrections of the Lee County Detention Facility. As Sheriff of Lee County, Jay Jones is responsible for promulgating the policies governing the Lee County Detention Facility. (Jones Aff. ¶ 5.) The Defendants have complied with all policies and procedures of the Lee County Detention Facility. They are not aware of nor have they authorized or allowed any deviation from said policies and procedures. (Jones Aff. ¶ 29; Torbert Aff. ¶ 32; McFarland Aff. ¶ 13.)

It is the policy of the Lee County Sheriff's Office that members of the Detention Center staff receive and answer any written grievances or requests made by inmates to the Sheriff, Chief Deputy Sheriff, or Detention Center personnel. All properly submitted nonmedical request forms are answered, and a copy is placed in the inmate's inmate file. All medical request forms are forwarded to the medical staff to be answered, and a copy of the answered request form is filed in that inmate's medical file. (Jones Aff. ¶ 6; Torbert Aff. ¶ 5; Exhibit G, Affidavit of Nurse Linda Stewart[5], "Stewart Aff.," ¶ 5.) The Plaintiff was aware of the request procedure as evidenced by the request forms he has filed that were answered and are present in his inmate and medical files. (Torbert Aff. ¶ 5; Stewart Aff. ¶ 6.)

---

[5] Nurse Linda Stewart has been employed as a nurse with the Lee County Detention Facility for over five years. She is a Licensed Practical Nurse (L.P.N.) and has been licensed for over twenty-years, having served as a nurse in the ICU and CCU in Cobb Hospital Emergency Room for fifteen-years. Nurse Stewart taught Nursing Assistance Clinicals for two years at Career Institute. She collected medical information for the law firm of Bellamy and Jones for three years, and she was employed as the personal nurse for Doctor Hoffman, in Phenix City, Alabama, for twelve years, prior to her employment with the Lee County Detention Facility. (Stewart Aff. ¶ 2.)

Requests for medical attention, telephone calls, or other matters must be made in writing on an Inmate Request Form.  An exception exists for requests of an emergency nature which will be handled immediately without a written request.  Inmates housed in the Lee County Detention Center will be furnished with Inmate Request Forms for the purpose of stating their requests or grievances in writing.  Detention Center personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate.  The officer receiving the request form is to answer the request if possible.  If that officer is unable to answer the request, he is to forward it to the appropriate individual and/or up the chain of command until the request is answered.  If the request form is directed to a particular officer, the officer receiving the request will forward the request to the officer to whom the request is directed.  If the officer to whom the request is directed is not on duty that day, the request will be addressed on that officer's next scheduled working day.  (Jones Aff. ¶ 7; Torbert Aff. ¶ 6.)

Neither Sheriff Jones nor Major Torbert has ever received any request form from the Plaintiff concerning any of the allegations made the basis of his Complaint.  Further, the Plaintiff has never even verbally complained to them of any of the alleged conditions.  In fact, the Plaintiff and Sheriff Jones and Major Torbert have never had any conversation regarding the alleged conditions.  (Jones Aff. ¶ 8; Torbert Aff. ¶ 7.)

Internal grievance procedures at the Lee County Detention Facility are available to all inmates.  It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon.  (Jones Aff. ¶ 9; Torbert Aff. ¶ 8.)  All inmates are provided access to a Lee County Detention Center Inmate Handbook.  A copy of this handbook is placed in each cellblock for inmates to review whenever they wish.  The inmate handbook states that an inmate may report a grievance on an inmate request form.  Grievances are first answered by the appropriate staff at the lowest level in the chain of command.  The inmate

4

handbook also states that if the inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the Sheriff, who will make the final decision. (Jones Aff. ¶ 10; Torbert Aff. ¶ 9.) Neither Sheriff Jones nor Major Torbert has ever received a grievance from the Plaintiff concerning any of the allegations made the basis of his Complaint. Per Lee County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to Major Torbert and then to Sheriff Jones if he were not satisfied with the response at the lower levels in the chain of command. The Plaintiff has not appealed any grievance to either Major Torbert or Sheriff Jones regarding the allegations made the basis of his Complaint. Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Center. (Jones Aff. ¶ 11; Torbert Aff. ¶ 10.)

The Plaintiff was aware of the method for submitting grievances. All properly submitted grievances are answered, and a copy is placed in the inmate's inmate file. (Jones Aff. ¶ 12; Torbert Aff. ¶ 11.) There are no grievances concerning the allegations made the basis of his Complaint in the Plaintiff's Inmate File. (Torbert Aff. ¶ 11; Exhibit H, Inmate File[6]). The Plaintiff was also aware of the procedure for filing grievances as evidenced by his grievance, which he specifically designated as such, dated May 15, 2006. This grievance did not relate to the allegations made the basis of his Complaint. (Stewart Aff. ¶ 6; Exhibit I, Medical File, Inmate Request Slip dated May 15, 2006.) The only request slip that could possibly be construed as a grievance regarding his fingers was sent to Nurse Stewart, but was not appealed to Major Torbert or Sheriff Jones. (Exhibit J, Inmate Medical File of Antonio Martinez[7], "Medical File,"

---

[6] All documents Plaintiff's Inmate File which are not referenced in the Special Report as separate exhibits are attached hereto as Exhibit H.
[7] For authentication of Plaintiff's Inmate Medical File, see Stewart Aff. ¶ 7.

Inmate Request Slip dated June 7, 2006; Exhibit K, Medical File[8].)  Further, the Plaintiff had filed a grievance labeled as such one month earlier.  (Exhibit I, Medical File, Inmate Request Slip dated May 15, 2006.)  Since the Plaintiff obviously knew to label the request as a grievance if he intended it to serve as such, the request slip dated June 7, 2006, was likely not intended as a grievance.  Even so, the grievance procedure was not exhausted because no appeal was taken. (Jones Aff. ¶ 11; Torbert Aff. ¶ 10.)

It is the policy of the Lee County Sheriff's Office to maintain a healthy environment within the Lee County Detention Center for the benefit of both inmates and the Detention Center staff.  (Jones Aff. ¶ 28; Torbert Aff. ¶ 27.)  The Plaintiff is not handicapped and does not need safety rails to get in and out of the shower.  (Torbert Aff. ¶ 28; McFarland Aff. ¶ 5.)  Prior to the date of the alleged fall, the Plaintiff had never made either Sheriff Jones or Major Torbert aware that he had any trouble getting in or out of the shower.  (Jones Aff. ¶ 29; Torbert Aff. ¶ 28.)  The showers at the Lee County Detention Center have rubber mats in front of them to prevent the inmates from slipping when entering or exiting the shower.  (Jones Aff. ¶ 30; Torbert Aff. ¶ 29.) Dr. McFarland has no duty or authority with regard to any conditions of the Detention Center, such as, but not limited to, the shower facilities.  Dr. McFarland's sole duty and authority is with regard to medical care of inmates.  (Jones Aff. ¶ 31; Torbert Aff. ¶ 30; McFarland Aff. ¶ 12.)

It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Center are entitled to a level of health care comparable to that available to citizens in the surrounding community which will ensure their physical and emotion well-being. (Jones Aff. ¶ 13; Torbert Aff. ¶ 12.)  Medical care rendered to inmates in the Lee County Detention Center is delivered under the direction of a licensed health care provider.  (Jones Aff. ¶

---

[8] All documents Plaintiff's Inmate Medical File which are not referenced in the Special Report as separate exhibits are attached hereto as Exhibit K.

14; Torbert Aff. ¶ 13.)  No health care personnel or Detention Center officer or other employee of the Sheriff's Office will ever summarily or arbitrarily deny an inmate's reasonable request for medical services.  (Jones Aff. ¶ 15; Torbert Aff. ¶ 14.)  Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively.  (Jones Aff. ¶ 16; Torbert Aff. ¶ 17.)  Inmates will be guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.  (Jones Aff. ¶ 12; Torbert Aff. ¶ 11.)  It is the policy of the Lee County Sheriff's Office to allow inmates incarcerated in the Lee County Detention Center to request health care services at any time.  (Jones Aff. ¶ 13; Torbert Aff. ¶ 12.)

Two methods may be utilized by inmates incarcerated in the Lee County Detention Center in order to secure health care services:

a.    Verbal Request:  An inmate may make a verbal request for emergency medical attention to any member of the Detention Center staff at any time.

b.    Written Request:  An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Center staff.  (Jones Aff. ¶ 14; Torbert Aff. ¶ 13.)

Requests for medical treatment will be accepted by members of the Detention Center staff at any time.  (Jones Aff. ¶ 15; Torbert Aff. ¶ 14.)  When a request for medical treatment is made to a member of the Detention Center staff, the staff member receiving the request will notify the Shift Supervisor of the inmate's request.  It is the Shift Supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner.  Any doubt as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will be offered.  (Jones Aff. ¶ 16; Torbert Aff. ¶ 15.)  Medical requests of an emergency nature are to be handled immediately.  (Jones Aff. ¶ 17; Torbert Aff. ¶ 16.)  As part of the booking process, inmates are informed of the methods by which they may maintain medical treatment during the

7

booking process.  (Jones Aff. ¶ 18; Torbert Aff. ¶ 17.)

The Detention Center nurses, under the direction of the Detention Center Administrator, are charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive medical treatment or for scheduling times when the treating physician may attend to health care needs at the Detention Center.  (Jones Aff. ¶ 19; Torbert Aff. ¶ 18.)  All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Center official.  Should the physician request, a Detention Center officer will be present for any and all examinations the treating physician deems appropriate.  (Jones Aff. ¶ 20; Torbert Aff. ¶ 19.)  Sick call is conducted on a scheduled basis by a licensed practical nurse and is available to all inmates.  All inmates are required to pay a fee for non-emergency treatment.  Inmates will not be denied medical treatment.  When an inmate has insufficient funds in his/her trust account to pay for the assessed fee(s), a lien in the amount of the fee(s) will be placed on the inmate's trust account against future monies which may be received.  (Jones Aff. ¶ 21; Torbert Aff. ¶ 20.)  Per the policy of the Lee County Sheriff's Office, all the Sheriff's employees always defer to the instructions of the trained medical professionals on all medical issues.  (Jones Aff. ¶ 22; Torbert Aff. ¶ 21.)  The Lee County Sheriff's Office paid for all of the Plaintiff's medical care while he was incarcerated in the Lee County Detention Center.  (Torbert Aff. ¶ 31.)

When Dr. McFarland first became aware of the Plaintiff's injuries to his fingers, he ordered an X-ray of the fingers.  (McFarland Aff. ¶ 6; Exhibit L, Medical File, X-Ray Exam Request.)  Two of the fingers were fractured but they were not dislocated.  (McFarland Aff. ¶ 6; Exhibit M, Medical File, X-Ray Report.)  Because there was no dislocation, the fingers did not have to be "set."  (McFarland Aff. ¶ 6; Exhibit M, Medical File, X-Ray Report.)  Instead they were splinted or buddy-taped for protection while they healed.  (McFarland Aff. ¶ 6.)

Dr. McFarland referred the Plaintiff to an orthopedic specialist, Dr. Ronald W. Hillyer at the Orthopedic Clinic.  (McFarland Aff. ¶ 7; Exhibit N, Medical File, Record of Medical Examination dated June 7, 2006.)  Dr. Hillyer spoke with Dr. McFarland and indicated that the fractures were healing.  Therefore, he put the Plaintiff in a posterior splint for protection while they continued to heal.  Dr. Hillyer recommended continuation of Motrin and physical therapy.  (McFarland Aff. ¶ 7; Exhibit N, Medical File, Record of Medical Examination dated June 7, 2006; Exhibit O, Medical File, Notes dated June 9, 2006; Exhibit P, Medical File, Notes dated June 13, 2006.)  Dr. McFarland saw the Plaintiff after his first visit with Dr. Hillyer and ensured that Dr. Hillyer's orders were being carried out.  (Exhibit P, Medical File, Notes dated June 13, 2006; McFarland Aff. ¶ 11.)  Dr. Hillyer recommended five sessions of physical therapy with the Plaintiff which were completed.  (McFarland Aff.¶ 9; Exhibit Q, Medical File, Physical therapy notes.)  On June 28, 2006, the last session of therapy, Dr. Hillyer determined that the fracture was closed and that no additional treatment was needed.  (McFarland Aff.¶ 9; Exhibit Q, Medical File, Physical Therapy notes, Notes dated June 28, 2006.)  Dr. McFarland followed up with the Plaintiff on July 6, 2006, and noted that the Plaintiff was continuing his physical therapy on his own as instructed by Dr. Hillyer.  (McFarland Aff.¶ 10; Exhibit R, Medical File, Notes dated July 6, 2006.)  The Plaintiff was given appropriate medical care and attention at all times.  Dr. McFarland followed Dr. Hillyer's orders at all times.  (McFarland Aff. ¶ 11.)

The records show that every time the Plaintiff made a request regarding his problems with his fingers, the medical staff addressed his concerns.  (Exhibit S, Medical File, Inmate Request Slips regarding Plaintiff's fingers.)   The Plaintiff was also given his prescribed medications.  (Exhibit T, Medical File, Medication Sheet-Administration Records from May 2006 through July 2006.)

## II.    LAW

### A.    All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

**B.    Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.    Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Lee County Detention Facility.  Despite the availability of a grievance procedure at the Lee County Detention Facility, the Plaintiff arguably did not file a grievance regarding any of the allegations made the basis of his Complaint.  At the very least, the Plaintiff did not file a grievance regarding his complaint of no rails in the showers.  Further, the Plaintiff has failed to appeal any grievance to either Major Torbert or Sheriff Jones.  Therefore, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Facility.

Second, the Plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).  In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Lee County is a state officer, as are his alter egos, and therefore, they would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998)

(affirming dismissal of prison action due to failure to exhaust administrative remedies, stating that the judicially recognized futility and inadequacy exceptions that existed under former § 1997e(a) are not applicable under the new mandatory exhaustion requirement of the PLRA); Booth v. Churner, 532 U.S. 731, 741 (2001) (concluding that the exhaustion of administrative remedies is now mandatory and courts cannot excuse exhaustion).

> **2.  Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

> "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .  In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002).  Because the Plaintiff has not alleged a physical injury that is greater than de minimis, his Complaint is due to be dismissed.

> **C.  Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff and jail officials of Lee County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties.  See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1267 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct

violated a constitutional right?"  Id.  (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the Plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

### 1.     The Plaintiff's Constitutional Rights were not violated.

#### a.     Conditions of Confinement Claims

In order to establish a conditions of confinement claim Plaintiff "must prove three elements:   (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation.  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90 (11th Cir. 1982) (third element).  Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately

indifferent to that condition is a subjective inquiry.  Wilson v. Seiter, 502 U.S. at 290.  In the instant case, the Plaintiff cannot establish either the objective or subjective components of his conditions of confinement claims.

With regard to the objective component, the Eleventh Circuit has held that "*extreme deprivations are required to make out a conditions-of-confinement claim*" under the Eighth Amendment.[9]  Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir. 2004) (emphasis in original). "[A] constitutional violation occurs only where the deprivation alleged is, objectively, 'sufficiently serious.'"  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  "[T]he Constitution does not mandate comfortable prisons."  Chandler, 379 F.3d. at 1289.  In the instant case, the Plaintiff cannot present evidence of any *extreme* deprivation that could be objectively considered "cruel and unusual."

### b.    Objective Component

It is clear that the condition alleged in the Plaintiff's Complaint was not "extreme" as to rise to the level of a constitutional violation.  The Plaintiff complains that he fell getting out of the shower because of the lack of safety rails in the shower.  However, the Plaintiff is not handicapped and does not need safety rails to get in and out of the shower.  Further, the showers at the Lee County Detention Center have rubber mats in front of them to prevent the inmates from slipping when entering or exiting the shower.  One district court in the Eleventh Circuit has recently recognized:  "Slip and fall accidents do not give rise to federal causes of action." Mallard v. Roberts, 2006 WL 1431570, *4 (M.D. Ga. May 19, 2006); see also Reynolds v. Powell, 370 F.3d 1028, 1031 (10th Cir. 2004) (holding that slippery prison floors do not pose a

---

[9] "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.  But it makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving pretrial detainees.'"  Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal citations omitted).

substantial risk of serious harm); <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment.") (citations omitted) (internal quotation marks omitted).   The Tenth Circuit in <u>Reynolds</u> reasoned that, although slippery floors are potentially hazardous, the public at large are daily faced with such a risk.  Similarly, members of the public at large do not have safety rails installed in their showers.  Therefore, just like in <u>Reynolds</u>, the lack of safety rails does not present a risk of serious harm.

Clearly, the Plaintiff's conditions of confinement are not extreme as would form a constitutional violation.

### c.      Subjective Component

Even if the Plaintiff's conditions of confinement were objectively "cruel and unusual," there must still be evidence of subjective deliberant indifference on the part of each Defendant. "To be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs."  <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1535 (11th Cir. 1993).  "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'"  <u>Id.</u>  (quoting <u>Duckworth v. Franzen</u>, 780 F.2d 645, 653 (7th Cir. 1985), <u>cert. denied</u>, 479 U.S. 816 (1986).  There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions.  <u>Id.</u> at 837-839.  No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not."

15

Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).  Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives.  LaMarca, 995 F.2d at 1536.

In the instant case, even if there were an excessive risk to his health or safety, the Plaintiff has not alleged that any of the Defendants knew of or disregarded that risk.  The Plaintiff is not handicapped and does not need safety rails to get in and out of the shower.  The showers at the Lee County Detention Center have rubber mats in front of them to prevent the inmates from slipping when entering or exiting the shower.  Prior to the date of the alleged fall, the Plaintiff had never made either Sheriff Jones or Major Torbert aware that he had any trouble getting in or out of the shower.  As to Dr. McFarland, the evidence is clear that he has neither duty nor authority with regard to the conditions of the Detention Center, and his only involvement with inmates is in rendering medical care.  Therefore, the Plaintiff has failed to sufficiently allege how each Defendant was deliberately indifferent to any alleged conditions. The Seventh Circuit addressed a similar situation in Murphy v. Walker:

> [The Plaintiff] alleges that the shower had no rails, floor mats, or other safety devices, making it unsafe for showering.  He does not claim, however, that county officials intentionally or recklessly maintained the shower in an unsafe condition, nor does he allege that they were aware of previous accidents in the jail shower. Thus, at most, Murphy is claiming that county officials negligently provided unsafe shower facilities, which is insufficient to state a claim under the Due Process Clause.

51 F.3d 714, 719 (7th Cir. 1995); see also Payton v. Epps, 82 Fed. Appx. 399, 399 (5th Cir. 2003) ("[A]llegation that prison officials were negligent for failing to place slip guards and guard rails in the showers where he is housed fails to state a claim because a claim for negligence does not establish an Eighth Amendment violation."); Gonzalez v. Horsley, 2003 WL 23025457, *1 (N.D. Cal. 2003) (dismissing allegations that the plaintiff fell because the sheriff "'neglected to

16

provide shower safety equipment' such as 'mats' and 'safety rails.'"). The Plaintiff in the instant case has similarly failed to show deliberate indifference on the part of the Defendants.

Because the Plaintiff cannot meet the objective or subjective tests as set forth in <u>Farmer, supra</u>, his conditions of confinement claims are due to be dismissed.

Furthermore, the United States Supreme Court has held that a significant injury is required in order to sustain a conditions of confinement claim. <u>Porter v. Nussle</u>, 534 U.S. 516, 528 (U.S. 2002); <u>see also</u> <u>Smith v. Copeland</u>, 87 F.3d 265, 268 (8th Cir. 1996) (noting that the plaintiff "did not allege that he was exposed to disease or suffered any other consequences of the exposure [to raw sewage]" and finding a de minimus imposition that did not amount to a constitutional violation). The Plaintiff has not alleged that he suffered an injury that is greater than *de minimus* as a result of the alleged conditions of his confinement. Accordingly, the Plaintiff cannot sustain a conditions of confinement claim.

### d.    Medical Claims

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that the Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment[10] violation only if those needs are "serious." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).

> In our circuit, a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm.

---

[10] "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. But it makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees.'" <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal citations omitted).

Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations and internal quotation marks omitted) (modification in original). The Plaintiff's medical need ceased to be "serious" when Dr. Hillyer indicated no further treatment was needed.

A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 845-47 (1994). Mere negligence does not suffice to prove deliberate indifference. Farmer, 511 U.S. at 835 ("Deliberate indifference describes a state of mind more blameworthy than negligence."). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

No deliberate indifference was shown in the instant case. The Plaintiff admits in his Complaint that he was given extensive medical care. His only complaint is that the medical care he admittedly received was improper. However, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985). An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment

18

violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

In Faison v. Rosado, the inmate complained that the jail doctor did not refer him to a physical therapist even though the orthopedic specialist had recommended it.  The doctor responded that the orthopedist's comment was just that the plaintiff should see a physical therapist *if* one was available.  The Court held that, "although Faison might not agree with the method of treatment provided, matters of medical judgment do not give rise to a § 1983 claim." Faison v. Rosado, 129 Fed. Appx. 490, 492 (11th Cir. 2003); see also Adams v. Poag, 61 F.3d 1537 (11th Cir. 1995) (question of medical judgment cannot make out a basis for imposing liability under § 1983).  The Court further stated:  "Even if physical therapy was a part of a more aggressive treatment plan, Dr. Monserrate's failure to refer Faison to a physical therapist may amount to negligence but not to a cognizable constitutional claim."

In the instant case the evidence is clear that the Plaintiff was given medical treatment *and* referred to an orthopedic specialist.  Initially, the Plaintiff's finger was X-rayed and it was determined that the Plaintiff had two fractured fingers but no dislocation.  Therefore, the fingers did not need to be "set."  Instead, the fingers were splinted or taped for protection while they healed.  Further, Dr. McFarland referred the Plaintiff to Dr. Hillyer, an orthopedic specialist for treatment.  Dr. Hillyer similarly did not determine that the Plaintiff's finger(s) needed to be set.  Instead, he recommended that the fingers be splinted for protection.  Dr. Hillyer ordered five sessions of physical therapy which were provided.  Just as in the above-cited cases, in the case at

bar, the Plaintiff's disagreement with the method of treatment does not rise to a § 1983 claim. The Plaintiff can make no showing whatsoever of deliberate indifference on the part of Dr. McFarland or any of the other Defendants.

Furthermore, Sheriff Jones and Major Torbert do not have any kind of medical education, training or experience.  They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates.  In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[11] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea.  302 F.3d at 847.  Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations.  "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions."  302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995).  Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription."  Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000).  Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision.  Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849; see also Brownell v. Figel, 950 F.2d 1285, 1291-92 (3d Cir. 1991) (granting summary judgment to police officer after rejecting plaintiff's contention that "the due process clause requires police to second guess a doctor's diagnosis in all instances where intoxicated accident victims display aberrant behavior.");  Rowe v. Rivera, 2000 WL 1507447, *6 (D.N.H. 2002) ("The defendants' reliance on the opinions of the doctors who examined Rowe after Dr.

---

[11] The medical director was a trained and licensed nurse.  302 F.3d at 846.

Hogan recommended surgery and who believed that his condition was not urgent does not constitute deliberate indifference to a substantial risk to Rowe's health."); Rosas v. Lane, 1987 WL 15762, *2 (N.D. Ill. 1987) ("Loathe to second-guess the judgment of medical health care professionals, courts rarely find violations of the Eighth Amendment in disputes between inmates and medical staff as to the appropriateness of a diagnosis or the adequacy of treatment actually rendered."); Ellison v. Scheipe, 570 F. Supp. 1361, 1363-64 (E.D. Pa. 1983) ("[P]rison officials cannot be required to second guess the medical judgment of the physician.").  This Court reached a similar conclusion in Shepard v. Stidham, 502 F. Supp. 1275 (M.D. Ala. 1980). In Shepard, the Court held that the prison officials acted reasonably in reliance on the recommendation of the physician, and therefore no deliberate indifference was shown.  Id. at 1281-1282.

In the instant case, the evidence shows that Plaintiff was treated by the Jail Nurse and the Jail Medical doctor for all his medical problems.  The orders of Dr. McFarland were followed, and Dr. McFarland followed the orders of Dr. Hillyer, the orthopedic specialist.  Sheriff Jones and Major Torbert, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of nurses and doctors.  Furthermore, Dr. McFarland, like the director in Meloy and like the prison officials in Shepard, cannot, and should not, second guess the judgment of Dr. Hillyer, an orthopedic specialist.  See Fillebrown v. Zettlemoyer, 1996 WL 460051, at *3 (E.D. Pa. 1996) ("[P]rison administrators and the nursing staff of the prison infirmary cannot be found deliberately indifferent for failing to defer to an inmate's judgment about appropriate diagnostic care when it contradicts the recommendations of the treating physician.  Since [the] defendants were entitled to rely upon the recommendations of the treating physician, their conduct did not amount to deliberate indifference.").  The evidence

shows that sound medical orders were followed at all times. Therefore, Defendants in no way violated the Plaintiff's constitutional rights.

> **2.    No clearly established law provided the Defendants with fair warning that their conduct was unlawful.**

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

In Wilson v. Jones, the Eleventh Circuit held that, where two district courts within the Eleventh Circuit had upheld the Sheriff's policy of blanket strip searches, there was no fair warning that this policy was unlawful for purposes of qualified immunity. 251 F.3d 1340, 1345-46 (11th Cir. 2001). In reference to conditions of confinement claim in the instant case, a district court within the Eleventh Circuit has held that slip and fall cases do not rise to the level of a constitutional violation. Mallard, 2006 WL at *4. Accordingly, just as in Wilson, because a district court in this Circuit has rejected a claim almost identical to that claim in the instant case,

the Defendants in this case are similarly entitled to qualified immunity. With regard to the medical claim, this Court has held that prison officials reasonably relying on the judgment of trained medical providers are not deliberately indifferent. Therefore, in the instant case, Sheriff Jones and Major Torbert are entitled to qualified immunity because they reasonably relied on the judgment of Dr. McFarland and Dr. Hillyer. It follows that Dr. McFarland is entitled to qualified immunity based on this principle as well because he reasonably relied on the judgment of an orthopedic specialist in the treatment of the Plaintiff.

The Plaintiff cannot meet his burden of demonstrating a constitutional violation or showing that clearly established law provided the Defendants with fair warning that their conduct was unlawful in any of the areas of which the Plaintiff complains. Therefore, Defendants are entitled to qualified immunity.

### D. The Plaintiff has failed to allege sufficient personal involvement on each claim.

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege sufficient allegations demonstrating that *any* of the Defendants were involved in the allegations which form the basis of his claim regarding his conditions of confinement. Further, the evidence is also clear that Dr. McFarland has neither duty nor authority with regard to the jail conditions. As to the medical claims, the Plaintiff has not shown how Sheriff Jones or Major Torbert were in any way involved in the alleged deprivation.

The lack of factual allegations against the Defendants make it clear that the Plaintiff is attempting to hold the Defendants liable on the theory of *respondeat superior*. To the extent that Plaintiff's claims are an attempt to hold the Defendants liable under a *respondeat superior* theory, his claim must similarly fail. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d at 1269. The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)). In light of the applicable law, the Plaintiff's allegations are insufficient to create liability on the part of the Defendants. As such, Plaintiff's conditions of confinement claims are due to be dismissed against all the Defendants and the medical claims are due to be dismissed as to Sheriff Jones and Major Torbert for lack of personal involvement. .

**E.    This Court lacks subject matter jurisdiction over the Plaintiff's claims for injunctive relief.**

Subject matter jurisdiction is a "threshold issue" which a Plaintiff must establish to the Court's satisfaction before he may prevail on any of his claims. See generally, Rosado v. Wyman, 397 U.S. 397, 402 (1970); Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998). In the instant case, this Court lacks subject matter jurisdiction over the

24

Plaintiff's claims for injunctive relief (his request that safety rails be installed and his request that the Defendants pay for his medical care) because these claims are moot and because he lacks standing to pursue his claims.

### 1. Plaintiff's claims for injunctive relief are moot.

"[A] moot suit 'cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.'" National Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005). Because Plaintiff has been released from the Lee County Jail, his claims for injunctive relief are moot. Zatler, at 399 ("In view of [the plaintiff's] subsequent release [from the correctional facility where claims arose], we find that his claims for declaratory and injunctive relief are now moot."); see also Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred. Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects." (citations omitted)); Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) (holding that prisoner's claim for injunctive relief was moot and properly dismissed, where prisoner had been transferred from county jail in which unconstitutional conditions allegedly existed); McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." (citation omitted)). Accordingly, the Plaintiff's request that the Lee County Detention Center install safety rails in the showers is moot. Further, while the Plaintiff was incarcerated in the Lee County Detention Center, all his medical bills were paid by the Lee County Sheriff's Office (besides the nominal copay). Because his bills were paid and because he is no longer in the

custody of the Lee County Detention Center, the Plaintiff's request that the Defendants pay his medical bills is moot as well.

### 2.    The Plaintiff lacks standing to pursue his claims.

A plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome.  Baker v. Carr, 369 U.S. 186, 204 (1962).  The plaintiff must have sustained, or is about to sustain, some direct injury.  Golden v. Zwickler, 394 U.S. 103, 109-10 (1969).  Of direct relevance to the present case, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

In City of Los Angeles v. Lyons, the plaintiff alleged that he had been subjected to a chokehold by arresting officers in violation of his federally protected rights.  461 U.S. 95, 97 (1983).  The plaintiff sought an injunction barring the future use of police chokeholds.  Id. 461 U.S. at 98.  After the Ninth Circuit affirmed the district court's grant of a preliminary injunction, the United States Supreme Court reversed, holding that the plaintiff lacked standing.  Id. 461 U.S. at 99-100.  The Court stated that the plaintiff's standing rested solely on pure speculation that he *might* be stopped by the police, *might* be arrested, and *might* again create a disturbance in the jail and *might* be subjected to another chokehold.  Id. 461 U.S. at 108.  The court noted that five months elapsed between the choking incident and the filing of the complaint and the plaintiff was not subjected to another chokehold.  Id.

Here, any injunctive relief is equally speculative.  Because he is no longer incarcerated in the Lee County Detention Center, the Plaintiff's claim is, in essence, that he *might* be released from the facility at which he is currently incarcerated, *might* be stopped by police, *might* be arrested by an officer with authority to incarcerate someone in the Lee County Detention Center, that he *might* be booked into the Lee County Detention Center, that he *might* be subjected to the

alleged actions and/or conditions made the basis of his Complaint.  Such speculation into future conduct does not grant the Plaintiff standing.  <u>Lyons</u>, 461 U.S. at 108.

Accordingly, the Plaintiff's request for safety rails to be installed and his request that his medical bills be paid are due to be dismissed for lack of standing.

###    F.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  <u>Greason v. Kemp</u>, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  <u>See Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  <u>Reeves</u>, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[12]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (<u>en banc</u>) quoting <u>Massachusetts Sch. of Law v. American Bar</u>, 142 F.3d 26, 40 (1st Cir. 1998).

---

[12] Although <u>Reeves</u> was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  <u>Reeves</u>, 530 U.S. at 150, <u>citing</u> Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

**CONCLUSION**

Defendants deny each and every allegation made by Plaintiff Antonio Martinez, in the Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

**MOTION FOR SUMMARY JUDGMENT**

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 15th day of August, 2006.

> **s/Amanda Kay Morgan**
> AMANDA KAY MORGAN Bar No.  ALL079
> Attorney for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  amorgan@webbeley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 15th day of August, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

> Antonio Martinez
> Kilby Correctional Facility
> AIS:  247206
> PO Box 150
> Mt. Meigs, AL 36057-0075

> **s/Amanda Kay Morgan**
> OF COUNSEL